**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                              :
DWIGHT DOWNER,                :
                              :        Civil Action No.
            Plaintiff,        :        04-5201 (NLH)
                              :
     v.                       :        **OPINION**
                              :
HOME DEPOT U.S.A.,INC., ET AL.,:
                              :
            Defendants.       :
_____:

**APPEARANCES:**

ALAN M. LANDS, ESQ.
1021 SOUTH MAIN STREET
PLEASANTVILLE, NJ 08232
*Attorney for Plaintiff, Dwight Downer*

ROBERT P. MERENICH, ESQ.
GEMMEL, TODD & MERENICH, P.A.
767 SHORE ROAD
P.O. BOX 296
LINWOOD, NJ 08221
*Attorney for Defendant, Detective Gary Potter*

**HILLMAN, District Judge**

### I.   INTRODUCTION

     Defendant Detective Gary Potter filed a motion for summary

judgment to dismiss plaintiff's complaint filed pursuant to 42

U.S.C. § 1983 for alleged violations of plaintiff's Fourth and

Fourteenth Amendment rights.[1]  Defendant's motion is granted

_____

     [1] Throughout his Complaint, Downer claims that defendants
deprived him of his rights under the "Constitution of the United
States and 42 U.S.C. § 1983."  Section 1983 does not create
substantive rights.  Rather, "it provides only remedies for

because we find no violation of plaintiff's constitutional rights and, therefore, Detective Potter is entitled to qualified immunity.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On October 16, 2002, plaintiff, Dwight Downer, was arrested at the Home Depot in Egg Harbor Township, New Jersey ("Home Depot").  Downer, an employee of Home Depot at the time, was charged with violating N.J.S.A. 2C:39-5b for unlawful use of a weapon without proper permits.  The charges against Downer were dismissed on March 28, 2003 upon motion by the Egg Harbor Township municipal prosecutor.

Plaintiff filed a complaint claiming damages for false arrest, excessive force, unlawful search of his person, car and residence, and malicious prosecution.  By Order entered on January 27, 2006, defendant Timothy Mickiewicz and defendant Home Depot U.S.A., Inc., were dismissed with prejudice by stipulation of the parties.  Defendants John Does 1-10, appear never to have been served with the complaint.

The remaining defendant, Detective Gary Potter, moved for summary judgment on the grounds that: probable cause existed to arrest Downer; Potter did not engage in malicious prosecution;

---

deprivations of rights established elsewhere in the Constitution or federal laws."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)(citations omitted).  Accordingly, we have construed plaintiff's complaint to request relief pursuant to 42 U.S.C. § 1983.

Potter did not bring Downer into physical custody and, therefore, could not exert excessive force; the search of Downer, his car and house were either reasonable and/or with consent; and that Potter is entitled to qualified immunity.  For the reasons explained below, we grant defendant Potter's motion for summary judgment on the ground that he is entitled to qualified immunity.

The events concerning Downer's arrest are as follows.  The day before the arrest, October 15, 2006, Andrew Jackson, an employee of Home Depot, was leaving the store after his shift ended when he saw Downer in his car.  Downer and Jackson engaged in a conversation next to Downer's car.  As Jackson was standing next to Downer's car, he looked in the driver's side and saw what appeared to him to be the handle of a handgun on the front seat. Jackson did not question Downer about the gun.  Instead, he walked back to his car and telephoned the receiving department at Home Depot where both he and Downer worked.  Rene Rodriguez, also an employee in receiving, answered the phone.  Jackson told Rodriguez that he thought he saw what looked like a gun on the front seat of Downer's car.  Jackson left the premises and did not go back into the Home Depot or talk to anyone else at the Home Depot that day.

Rodriguez and the receiving area supervisor, Scott Goodman, approached Timothy Mickiewicz, the store manager of Home Depot,

and Pamela Huot,[2] the assistant store manager, stating that Jackson telephoned and told Rodriguez that he saw what he thought was a gun on the seat of Downer's car.  Following receipt of that information, Huot approached Downer and asked to speak with him. Mickiewicz and Huot then interviewed Downer for roughly three hours.  During the interview, Mickiewicz asked Downer if he had a gun and Downer responded that he did not own a gun and "hates guns."  Downer told Mickiewicz and Huot that Scott Goodman was making up lies about him and making him look incompetent.  Downer testified that during the interview he admitted to Mickiewicz and Huot that he wanted to hurt Scott Goodman and wanted to "hit him with something."  Mickiewicz and Huot testified that during the interview Downer also stated that he had been a former police officer in North Jersey and that he had shot and killed two people.  Downer testified that he never made such a statement. Mickiewicz and Huot further testified that Downer appeared very emotional during the interview.

At the conclusion of the interview, Mickiewicz gave Downer permission to take the day off with pay.  Downer returned to the receiving area to hang up his apron.  He saw Rodriguez on a forklift and stopped to ask Rodriguez why he told Mickiewicz and Huot that he, Downer, had a gun.  Rodriguez responded that he did

---

[2] In some of the deposition transcripts, "Huot" appears as "Hewitt."  To avoid confusion, "Huot" is used throughout this Opinion.

not want anyone to get hurt.  Downer testified that he told
Rodriguez that he did not have a gun.  Rodriguez testified that
Downer also told him that by Rodriguez telling Mickiewicz and
Huot about the gun in the car, Rodriguez had "saved Goodman's
life."  Downer denied ever making this statement.  Both Rodriguez
and Downer testified that the conversation between them was
friendly, and Downer told Rodriguez that he was not angry with
him.  Huot then walked by and saw Downer and Rodriguez talking.
She asked Downer why he was still in the store.  Downer then left
the Home Depot.

    After Rodriguez's conversation with Downer, Rodriguez then
approached Jerry Pantangelo, and told him that while he was
talking to Dower, he saw a gun in Downer's waistband.  Pantangelo
and Rich Jump, another supervisor at Home Depot, informed
Mickiewicz.  Mickiewicz then called the Egg Harbor Township
Police and reported to Sergeant Fair that he learned from two
employees, Rodriguez and Goodman, that another employee, Jackson,
witnessed what looked like a gun on the front seat of Downer's
car.  Mickiewicz stated that he and Huot interviewed Downer who
told them that he wanted to hurt Scott Goodman, and that he was a
former police officer who killed two individuals.  Mickiewicz
said that Downer appeared erratic during the interview.
Mickiewicz further stated that he recently learned that another
employee, Rodriguez, saw Downer with a gun in the building.

Mickiewicz made arrangements to come into the police station the next morning with Home Depot divisional human resource manager, Bob Silk.

In between the time of the call to Sergeant Fair and the morning of October 16, 2002, Detective Potter was assigned to investigate the complaints regarding Downer.  Potter testified that he read the report prepared by Sergeant Fair but did not speak directly to him about it.[3]  Detective Potter wrote in his report that he contacted the New Jersey State Police Firearms Unit and learned that there were no firearms issued to Downer in the New Jersey State Police files, and that there was no "permit to carry" in Downer's name for retired police officers.  It does not appear from the record that Detective Potter conducted a search, or was informed of the results of any search,[4] to determine whether Downer had a permit to carry a gun as private resident of New Jersey before he arrested Downer.

---

[3] Sergeant Fair's report was never produced.  Detective Potter testified that the report could not be retrieved from the department's computer system and no hard copy could be found. Defendant has failed to adequately explain the failure to properly maintain this official police report.

[4] Officer Edward Schafer of the Egg Harbor Police Department wrote in his report that he "began checking to see if I [sic] Dwight [Downer] had any firearms issued to him.  I found no weapons listed as his."  Although Officer Schafer was not questioned by counsel as to the ambiguity of this statement, it is irrelevant to the inquiry as to whether probable cause existed to arrest Downer since Detective Potter admitted he did not read Officer Schafer's report before he conducted Downer's arrest.

Mickiewicz and Silk went to police station on the morning of October 16, 2002, and gave a statement regarding the events of October 15, 2002, to Officer Edward Schafer of the Egg Harbor Township Police Department.  Potter did not participate in the meeting, but after it concluded, Potter spoke with Schafer and with Mickiewicz briefly.  Potter testified that he spoke with his superiors regarding what he learned transpired during Mickiewicz's meeting with Schafer and that he recommended that Downer be arrested if he showed up for work that day at Home Depot.

On October 16, 2002 Potter arrived at the Home Depot at approximately 11:30 a.m., with the intention of arresting Downer. Upon arriving Potter spoke with Mickiewicz, Pam Huot, and other unidentified Home Depot management or staff members.[5]  Potter

---

[5] Potter testified that he conducted an in-person interview with Andrew Jackson at Home Depot, and a telephonic interview with Rodriguez, before he arrested Downer.  However, there is no mention of either interview in Potter's report, and neither Mr. Jackson nor Mr. Rodriguez recalls if he spoke with Detective Potter before Downer's arrest.  Potter also testified that he took notes during the interviews but destroyed the notes after he typed up the report.  Potter gave a description of Jackson and time, date and place where he conducted the interview, as well as a summary of his discussion with Rodriguez.  In viewing the facts in a light most favorable to plaintiff, however, we cannot conclude that Potter conducted interviews of either Jackson or Rodriguez before Downer's arrest.  See Couden v. Duffy, 446 F.3d 483, 489 (3d Cir. 2006) (concluding that the District Court failed to consider the fact in the light most favorable to plaintiffs in granting summary judgment in favor of police officers).  Interviews with eye witnesses are an important and integral part of a police officer's arrest report, and the Court cannot conclude it was mere oversight not to include either

reviewed the Home Depot employment files of Downer, Rodriquez and Jackson.  Potter also reviewed a statement written on October 15, 2002, and signed by Rodriguez,[6] that Downer had lifted up his shirt on October 15, 2002, and showed Rodriguez a gun.

In his report, Detective Potter wrote that he was advised by Home Depot management that Downer drove a "dark blue colored smaller vehicle."  At 12:10 p.m., he and Detective Chambers drove to Downer's residence but there was no vehicle fitting that description at the house.  Detectives Potter and Chambers returned to the Home Depot and set up patrol cars at both entrances to the Home Depot parking lot.  A member of Home Depot management was present with each of the patrol cars for the purpose of identifying Downer when he arrived.  Pam Huot was

---

interview in the report.  Because both Jackson and Rodriguez do not recall speaking with Detective Potter, and because those conversations were not included in Potter's report, we resolve this discrepancy in favor of plaintiff for purposes of summary judgment and conclude that Potter did not speak with either Jackson or Rodriguez before Downer was arrested.

While we resolve this motion in defendant's favor, Detective Potter should have kept his notes and properly documented his interviews with Jackson and Rodriguez.  Equally disturbing is the assumption that he did not conduct interviews of critical eyewitnesses readily available to him before making an arrest.  Although probable cause existed to arrest Downer without the interviews, those interviews should have been properly documented.

[6]  Rene Rodriguez testified that he does not write in English very well and that another Home Depot employee, Rich Jump, wrote the October 15, 2002 statement for him.  Rodriguez testified that he read the statement, understood it and signed it.

stationed with Detective Potter and stated that Downer had told her during the three hour interview the day before that he was involved in a police shooting and had shot and killed two people.

Downer arrived at Home Depot at approximately 1:30 p.m.  At that time, Egg Harbor Township Police officers on the scene were erroneously arresting someone whose vehicle fit the description of Downer's vehicle.  Although the plan was to arrest Downer in the parking lot, Downer walked unnoticed into the store while the police were arresting the wrong person.

When Home Depot management observed Downer inside the store, they notified the police who then responded inside.  Detective Potter remained in the parking lot of Home Depot and was not present when Downer was taken into physical custody.  Between two and four uniformed officers approached Downer with guns drawn.  A rifle was pointed at Downer's head.  Downer complied with instructions from the officers to turn, face the wall and to put his hands on the wall.  Downer was patted down and handcuffed. No weapons were found on his person.

Downer was taken outside to the parking lot and Potter identified himself and explained that he was being arrested because the police received information from the Home Depot store manager that Downer had a gun.  The officers obtained voluntary consent from Downer to search his car.  Written consent was obtained from the owner of Downer's residence to conduct a search

of his home.  No guns were found in Downer's car or residence at the time of the search.

Downer was taken to the precinct and placed in a cell for a couple of hours and then interrogated by two officers.  After the interrogation, Downer was returned to a cell where he stayed until approximately nightfall and was released.

The threshold inquiry before the Court is whether defendant Detective Potter is entitled to qualified immunity.  Because we find that there was probable cause to arrest Downer for unlawful possession of weapon qualified immunity applies and plaintiff's suit is barred.

### III. <u>DISCUSSION</u>

**A. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the

10

governing substantive law, a dispute about the fact might affect
the outcome of the suit.  Id.  In considering a motion for
summary judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  Anderson, 477 U.S. at 256-57.  A
party opposing summary judgment must do more than just rest upon
mere allegations, general denials, or vague statements.  Saldana
v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Elements of a Claim Brought Pursuant to 42 U.S.C.
§ 1983**

To state a claim under 42 U.S.C. § 1983, the plaintiff
must show that: (1) the conduct complained of was committed by a
person acting under color of state law; and (2) that the conduct

11

deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005)(citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995); citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Detective Potter does not dispute that he was acting under color of state law.  Detective Potter does, however, dispute that his arrest of Downer deprived him of his Fourth and Fourteenth Amendment rights.  Specifically, Potter maintains that probable cause existed to arrest Downer and, therefore, Potter is entitled to qualified immunity from Downer's claims.  We agree and set forth the underlying reasons below.

**C.   Standard for Qualified Immunity**

In his motion for summary judgment, defendant Potter raises the defense of qualified immunity.  Whether qualified immunity exists is an issue that must be resolved as early as possible in the litigation.  Wright v. City of Philadelphia, 409 F.3d 595, 599 (3rd Cir. 2005) (remarking that the "Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation").  The standard promulgated by the Third Circuit in considering whether qualified immunity applies to law enforcement officers on a motion for summary judgment is as follows:

12

> Qualified immunity protects law enforcement officers from being tried for actions taken in the course of their duties.  If the immunity applies, it entitles the officer to be free of the 'burdens of litigation.' But the immunity is forfeited if an officer's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' To determine ... whether the officers have lost their immunity, we must engage in a two step analysis. First, we must decide 'whether a constitutional right would have been violated on the facts alleged·····'.
> ... Second, if we believe that a constitutional violation did occur, we must consider whether the right was "clearly established."  The question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This is an objective inquiry, to be decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004)(citations omitted).

Applying the above test, we must first determine whether Detective Potter violated Downer's constitutional rights.  Downer has alleged that Detective Potter violated his Fourth and Fourteenth Amendment rights and has claimed damages for false arrest, excessive force, unlawful search of his person, car and residence, and malicious prosecution.  We address each of the claims separately.

### 1.   False Arrest

Downer argues that Detective Potter arrested him without probable cause.  The Fourth Amendment provides that people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall

13

issue, but upon probable cause." U.S. Const. Amend. IV.  To
determine whether probable cause existed, we start with the law
of the state where the arrest occurred.  Wright v. City of
Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005)(stating that in
order to determine whether an arrest is valid, the Court must
look to the law of the state where the arrest took place).
Downer was arrested for unlawful possession of a weapon in
violation of N.J.S.A. 2C:39-5(b), which reads:

> Handguns.  Any person who knowingly has in his
> possession any handgun, including any antique
> handgun without first having obtained a permit to
> carry the same as provided in N.J.S.2C:58-3, is
> guilty of a crime of the third degree.

Our inquiry then turns to whether it was reasonable for
Detective Potter to believe probable cause existed to arrest
Downer without a warrant for violation of the above statute.  To
make this determination, we look to the "totality of the
circumstances" and use a "common sense" approach to assess
whether the "objective facts available to the officers at the
time of arrest were sufficient to justify a reasonable belief
that an offense [had been] committed." Sharrar v. Felsing, 128
F.3d 810, 818 (3d Cir. 1997).

Based on the information which was available to Detective
Potter before he initiated a warrantless arrest of Downer, we
conclude that a reasonable officer would believe that he had
probable cause to arrest Downer for unlawful possession of a

weapon.  Here, Detective Potter testified that on the morning of Downer's arrest, he read the report prepared by Sergeant Fair that purportedly documented Sergeant Fair's conversation with Tim Mickiewicz on the previous night.  Although Potter did not sit in on the interview with Mickiewicz, Bob Silk and Officer Schafer, Potter spoke with Mickiewicz briefly at the police station. Potter also spoke with Officer Schafer concerning his interview with Mickiewicz and Silk.  From Sergeant Fair's report, his discussions with Officer Schaeffer, and a brief interaction with Mickiewicz at the police station, Potter learned that an employee of Home Depot, Andrew Jackson, spotted what he thought was gun in Downer's car in the Home Depot parking lot, and that another employee, Rodriguez, saw a gun in the waistband of Downer's shirt.  He also learned that Mickiewicz and Huot talked with Downer for approximately three hours on October 15, 2002, during which Downer seemed upset, cried, said he wanted to hurt his supervisor Scott Goodman, and that he was involved in a police shooting in which he shot and killed two people.  Potter determined that Downer was not issued a permit to carry a firearm by the New Jersey State Police.

The finding of probable cause by Potter is based in part on his belief in the truthfulness of the statements provided by Jackson and Rodriguez.  Plaintiff argues that their statements were unreliable because neither Jackson nor Rodriguez personally gave their statements to the police, and, therefore, they were

15

not subject to punishment if they violated 2C:28-4 pertaining to false reports to law enforcement authorities.  This lack of exposure to criminal liability, plaintiff argues, renders Jackson and Rodriguez to be no more than anonymous witness whose statements lacked the requisite indicia of reliability for a determination of probable cause.  We disagree.

The Supreme Court has provided that "in making a warrantless arrest an officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" Illinois v. Gates, 462 U.S. 213, 242 (1983) citing Jones v. United States, 362 U.S. 257, 269 (1960).  Here, the informants were not anonymous.  Jackson and Rodriguez were employees of Home Depot who provided statements to their supervisors.  As employees, Home Depot maintained substantial information about them.  Also, as employees, it would have been reasonable for Detective Potter to presume that they have an interest in keeping their jobs and would not put their employment at risk by providing false information to their superiors about a co-worker.[7]  Their

_____

[7] Plaintiff argued that Jackson and Rodriguez had a motive to provide false information because there was animosity among the workers in the receiving department and an interest in having Downer removed from the department.  However, plaintiff has provided no evidence of this alleged subversiveness.  Rather, the testimony reveals that Downer and Jackson were cordial coworkers, and Downer and Rodriguez considered themselves friends.

supervisor, Mickiewicz, provided two statements directly to the police: first, in a telephone call to Sergeant Fair; and, second, in an in-person interview with Officer Schafer when he came to the police station.  Mickiewicz was an eye witness as to Downer's demeanor and statements that he shot and killed two people and that he wanted to hurt his supervisor Scott Goodman.  Mickiewicz relied on the information provided to him by Rodriguez, who spoke to Jackson and who stated that he witnessed the gun in Downer's waistband.  Detective Potter spoke with witnesses Mickiewicz and Huot before the arrest.

The issue is not, as plaintiff argues, whether Jackson and Rodriguez were subject to criminal liability.[8]  Rather, the inquiry is whether the informant lacked sufficient indicia of reliability.  See Florida v. J.L., 529 U.S. 266, 266-67 (2000).  This inquiry is made in light of the "totality of the circumstances."  See U.S. v. Valentine, 232 F.3d 350, 354 (3d Cir. 2000).  Unlike anonymous tips, Detective Potter was able to

---

[8]  Jackson and Rodriguez could be subject to criminal liability if they caused false information to be provided to the police.  N.J.S.A. 2C:28-4 provides in part that a "person commits a disorderly offense if he: (1) Reports or *causes to be reported* to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or (2) Pretends to furnish or *causes to be furnished* such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident." (emphasis added).  It would seem that Jackson and Rodriguez caused Home Depot to file a report concerning Downer with the police and, therefore, a reasonable interpretation of the statue would leave them open to criminal liability if those statements violated N.J.S.A. 2C:28-4.

assess the reliability of Wickiewicz and Huot when he spoke with them in person.  As managers of Home Depot who worked daily with Jackson, Rodriguez and Downer, it was not unreasonable for Potter to rely on their description of events.  Especially here where Mickiewicz and Huot met with Downer for approximately three hours on the day he allegedly had the gun.  Further, both Jackson and Rodriguez could easily be found and questioned further since their employer had substantial personal information about them.  Thus, under the totality of the circumstances, we conclude that the requisite amount of reliability was present as to the statements provided by Jackson and Rodriguez.

### 2.  Excessive Force

Downer claims that Detective Potter deprived him of his Fourth and Fourteenth Amendment rights through use of excessive force by the arresting officers.  In determining whether excessive force was used during an arrest, an "objective reasonableness" test is applied.  Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997)(finding that it was not excessive force during arrest process to deploy SWAT team, force plaintiffs to lie face down in the dirt and threaten to "blow [their] fucking heads off.").  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

18

resisting arrest or attempting to evade arrest by flight." <u>Id.</u>
citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); <u>Groman v.
Township of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995).

Applying the objective reasonableness test to Downer's
arrest, we find that the behavior of the arresting officers was
reasonable.  At the time of the arrest, it was believed that
Downer had possibly shot and killed two people, had made remarks
that he wanted to hurt his supervisor, and had brought a handgun
to work.  The Home Depot was open for business during the time of
arrest and, therefore, customers and employees of Home Depot were
inside the store.  Given this background, we do not think it was
an excessive use of force to have four or five uniformed officers
with rifles drawn to arrest Downer.  Downer complied with the
officers' instructions to turn, face the wall and to put his
hands on the wall.  Downer does not allege that the arresting
officers applied any physical force above that required to pat
down and handcuff Downer.

During the arrest, Detective Potter was sitting in a patrol
car in the parking lot of Home Depot.  It appears that Downer is
charging Potter with a type of supervisory liability. <u>See</u> <u>Puch v.
Breitenreiter</u>, No. 94C7766, 1996 WL 554548, at *7 (N.D. Ill.
1996) (finding officer not liable where he was not present during
arrest and did not ratify or authorize subordinates' actions);
<u>Sharrar</u>, 128 F.3d at 821 (concluding that officer in charge had
no knowledge of alleged abuse of plaintiff and, therefore, not

19

liable).  Even if a constitutional violation occurred, Downer
failed to provide any evidence that Potter somehow authorized or
ratified the arresting officers' conduct.  <u>Puch</u>, 1996 WL 554548,
at *7.  Regardless, however, no excessive force was used during
Downer's arrest so no constitutional violation existed that could
have been authorized or ratified by Potter.  Therefore, we grant
Potter's motion for summary judgment as to Downer's claim of
excessive force in violation of his Fourth and Fourteenth
Amendment rights.

   **3.   Search of Vehicle and Residence**

   Downer claims that he was subject to an unlawful search of
his residence, vehicle and person in violation of his Fourth and
Fourteenth Amendment rights.  Downer testified that he consented
to the search of his car.  <u>See</u> <u>U.S. v. Givan</u>, 320 F.3d 452, 459
(3d Cir. 2003) (stating that "[i]t is well settled ... that a
search conducted pursuant to consent is one of the specifically
established exceptions to the search warrant requirement.").  The
owner of his residence provided written consent to search the
home.  <u>Id</u>.  With regard to the search of "his person," we have
found that probable cause existed to arrest Downer on the charge
of unlawful possession of a weapon and, therefore, the search of
Downer's person was a legal search incident to lawful arrest.  <u>See</u>
<u>U.S. v. McGlory</u>, 968 F.2d 309, 343 (3d Cir. 1992) (where probable
cause existed, evidence seized from vehicle properly admitted
under the search incident to lawful arrest exception to the

warrant requirement).  Thus, we find as a matter of law that no fact finder could conclude that Detective Potter conducted an unlawful search of either Downer's vehicle, residence or person and, therefore, grant summary judgment in favor of defendant.

### 4.  Malicious Prosecution

Downer claims that Detective Potter knew or should have known that probable cause did not exist for the original or downgraded charges, and that Potter should have taken steps to have the charges against Downer dismissed.  Downer claims he was the subject of malicious prosecution in deprivation his Fourth Amendment rights.

To state a claim for malicious prosecution under 42 U.S.C. § 1983, "a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) citing Donahue v. Gavin, 280 F.3d 371, 379-80 (3d 2002).  Here, probable cause existed to arrest Downer on the charge of unlawful possession of weapon under New Jersey law.  Therefore, Downer cannot prove the third element of this claim.  Accordingly, defendant's request for summary judgment is granted on this

claim.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendant Potter's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.

An Order will be entered consistent with this Opinion.


                              <u>s/Noel L. Hillman</u>
                              NOEL L. HILLMAN, U.S.D.J.

Camden, New Jersey

Dated: December 7, 2006

_____